# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LAVELLE WOODALL, | ) CASE NO. 1:17-cv-01289 |
| | ) |
| Plaintiff, | ) JUDGE JAMES GWIN |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| NANCY A. BERRYHILL, | ) |
| *Acting Comm'r of Soc. Sec.*, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendant. | ) |

Plaintiff, Lavelle Woodall (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

On December 10, 2013, Plaintiff filed his applications for POD and DIB, alleging a disability onset date of April 18, 2012. (Transcript ("Tr.") 149-156). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 94-114). Plaintiff participated in the hearing on January 11, 2016, was represented by counsel, and testified. (Tr. 39-62). A vocational expert ("VE") also participated and testified. *Id*. On April 4, 2016, the ALJ found Plaintiff not disabled. (Tr. 34). On April 27, 2017, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On June 20, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12 & R. 13).

Plaintiff asserts the following assignment of error: substantial evidence does not support the RFC finding. (R. 12, PageID# 718-722).

**II. Evidence**

**A. Relevant Medical Evidence**[1]

    **1. Treatment Records**

On December 14, 2012, Van Warren, M.D., of the University Hospitals Rheumatology Department noted that examination of Plaintiff revealed "soft tissue swelling in the proximal aspect of the digits of both hands," "tightness of the distal aspect of the digits of both hands without any ulcerations or periungual," "very minimal flexion contracture of the PMP joint of

---

[1] The recitation of the evidence is not intended to be exhaustive. As Plaintiff's entire theory revolves around limitations associated with his upper extremities, the court limits its discussion to those portions of the record.

the digits of both hands," "slight crepitus on range of motion of the right elbow which also has a slight flexion contracture," and "mild pain on range of motion of shoulders." (Tr. 288). Dr. Warren noted Plaintiff had "a sero negative inflammatory arthritis consistent with rheumatoid arthritis or spondyloarthropathy." *Id*.

Treatment notes from February 11, 2013, indicate Plaintiff had deformities in the proximal interphalangeal (PIP), metacarpophalangeal (MCP), and distal interphalangeal (DIP) joints of both hands. (Tr. 237).

On April 25, 2013, Plaintiff was seen by Svaraman Padmapriya, M.D., who noted chronic flexion deformities in both hands on objective examination, and diagnosed inflammatory arthropathy. (Tr. 285).

On July 23, 2013, Plaintiff was again seen by Dr. Padmapriya, who noted Plaintiff was positive for flexion contractures bilaterally in the hands, but negative for joint swelling. (Tr. 214).

On February 6, 2014, an x-ray of Plaintiff's right hand noted "[t]he fingers are flexed which limits evaluation. Mineralization is normal. There is no focal soft tissue abnormality. The joint spaces are maintained. No evidence of acute or healing fracture, periosteal reaction, or erosion." (Tr. 263).

On February 12, 2014, state agency physician Leon D. Hughes, M.D., reviewed the evidence of record and assessed the following limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; sit and stand/walk for 6 hours each in an 8-hour workday; and that, due to rheumatoid arthritis, Plaintiff would be limited to "no more than bilateral frequent push/pull in [his upper extremities]." (Tr. 72). With respect to Plaintiff's manipulative limitations, Dr. Hughes indicated that Plaintiff had "limited" ability to reach, handle and finger bilaterally. (Tr.

3

73). His ability to feel was unlimited. *Id*. Dr. Hughes concluded that Plaintiff would be limited to no more than frequent bilateral overhead reaching, handling, and fingering. *Id*.

On November 23, 2015, Plaintiff was seen by Dr. Warren. (Tr. 430). "The musculoskeletal examination shows limited flexion of the PIP and MCP joints of the digits of both hands. Extension of the wrists are limited to approximately 15° and flexion to approximately 10° bilaterally. There is approximately a 10° flexion contracture of the elbows. There is good range of motion of the shoulders." *Id*.

On August 15, 2016, Alexander Hannan, D.O., wrote a letter indicating that he last saw Plaintiff on August 10, 2016, noting a "4-5 year history of psoriasis as well as what was originally diagnosed as moderate to severe rheumatoid arthritis at another institution." (Tr. 656). Dr. Hannan noted Plaintiff had been taking medication for several years, which improved Plaintiff's symptoms from "'nearly bedridden' per his own account but is now able to at least walk and do most of his ADLs." *Id*. On evaluation, Plaintiff demonstrated flexion contractures in all of his digits and substantial stiffness of most of the joints in his body." *Id*. Dr. Hannan suspected psoriatic arthritis given his history of severe psoriasis as well as ongoing symptoms of inflammatory arthritis in an appropriate distribution of joints. *Id*.

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On February 6, 2014, Plaintiff underwent a consultative examination with Eulogio Sioson, M.D. (Tr. 265-266). His impression included rheumatoid arthritis, but "no rheumatoid nodules seen, no joint deformity or subluxation or inflammatory changes but with pain and stiffness." (Tr. 266). Plaintiff had tenderness in all his joints with limitation of range of motion, and "tended to partially close his hands—20-30 degrees flexion at the MP joints—could not actively extend his fingers—could extend to 0 degrees passively but with a lot of resistance. He could close his

4

hands to grasp and hold the 1.6 lb. dynamometer but with 0 lb. grip." (Tr. 266). Dr. Sioson concluded that "if one considers limitation of range of motion from pain and above findings, walking, standing, lifting, carrying, handling would be affected and limited to sedentary work-related activities." *Id*.

On February 12, 2014, state agency physician Leon D. Hughes, M.D., reviewed the record and opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, with limited ability to reach in any direction bilaterally, and limited ability to perform gross manipulation (handling) and fine manipulation (fingering) bilaterally. (Tr. 72-73). Dr. Hughes explained that Plaintiff "would be limited to no more than frequent bilateral overhead reaching," and "no more than frequent bilateral handling and fingering." *Id*.

On June 26, 2014, state agency physician Jan Gorniak, D.O., reviewed the record and reiterated the same limitations set forth above by Dr. Hughes. (Tr. 87-88).

On November 16, 2015, Dr. Warren completed a check-the-box- questionnaire concerning some of Plaintiff's physical impairments. (Tr. 424-428). Dr. Warren agreed that Plaintiff suffers from inflammatory arthritis and satisfies the criteria of the "Primer on the Rheumatic Disease" published by the Arthritis Foundation. (Tr. 424). Dr. Warren did not respond to a question asking him to provide clinical features and serologic findings supporting the diagnosis. *Id*. He indicated that Plaintiff's inflammatory arthritis caused the following symptoms: joint tenderness, malaise, stiff and inflexible spine; uveitis, joint pain, and morning stiffness. *Id*. Dr. Warren identified Ankylosing spondylitis as a medical condition associated with Plaintiff's inflammatory arthritis. *Id*. Dr. Warren indicated that plaintiff's condition did not result in persistent inflammation or deformity of one or more major peripheral weight-bearing joints. (Tr. 425). He indicated that Plaintiff's condition did not result in an extreme limitation of the ability to walk, and that

5

Plaintiff could stand/walk 5 hours in an 8-hour workday. *Id*. Overall, Dr. Warren found Plaintiff could ambulate without an assistive device, and could carry out routine ambulatory activities. *Id*.

Dr. Warren also opined that Plaintiff's medical conditions interfere with his ability to independently initiate, sustain, or complete activities involving the use of the upper extremities. (Tr. 426). Specifically, Dr. Warren indicated that Plaintiff has "limited repetitive movements of digits of both hands and both shoulders." *Id*. Dr. Warren also indicated that Plaintiff's "medical condition interfere[s] with [his] ability to sustain functions such as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." *Id*. Dr. Warren indicated that "[p]ain in shoulders and hands limit prolonged forced movement like tight grasping and lifting heavy objects." *Id*. Dr. Warren, however, found that Plaintiff's impairments did not result in an inability to perform fine and gross movements effectively. *Id*. Nevertheless, pain in Plaintiff's shoulders "limit lifting and carrying heavy objects." *Id*. Dr. Warren concluded that Plaintiff would be unable to sustain any type of work activity on a full-time basis based on Plaintiff's "limited ability to perform repetitive tasks, lift heavy objects repeatedly, due to pain in [illegible] hands and shoulders." (Tr. 428).

On May 1, 2016, in a private disability form that appears to have been signed by Dr. Padmapriya, it is indicated that Plaintiff has low back pain from inflammation related to ankylosing spondylitis, and joint pain and swelling with chronic contractures. (Tr. 420). He opined that Plaintiff would "not be able to function at any job," as he is "unable to bend/stand for prolonged periods of time/sit/or hold any objects 2/2 chronic joint deformities." *Id*. Despite biologic therapy, Dr. Padmapriya indicated that Plaintiff has chronic deformities which disable him. *Id*.

On July 21, 2016, Carmen E. Gota, M.D., wrote a letter indicating that he was treating

6

Plaintiff "for uveitis and arthritis, with neck and back involvement. He suffers with stiffness, and pain in back and multiple joints and inability to extend hands and elbows, and and [sic] the flexion contractures in hands. Patient cannot work with his hands due to the afore mentioned [sic]." (Tr. 654).

**B. Relevant Hearing Testimony**[2]

The VE characterized the claimant's past relevant work as a "supervisor of technical operations with … a cable and internet provider," Dictionary of Occupational ("DOT") 235.132-010. (Tr. 57). The job is light as normally performed, but claimant represented that at times he lifted up to 50 pounds, which would fall in the medium exertional range. (Tr. 57). The job is skilled job with an SVP of 6. *Id*. There are transferable skills to the light exertional level, but the VE was uncertain whether any skills would transfer to the sedentary level. *Id*.

The ALJ posed the following hypothetical question to the VE:

> The first person, male, 39 years of age, high school education, same work background as Mr. Woodall.
>
> ***
>
> This person would be able to lift, carry 20 pounds occasionally, can stand, walk five out of eight, can sit six out of eight. Push, pull and foot pedal would be frequent as opposed to constant. This person would be able to occasionally use a ramp or stairs but never allowed a rope or a scaffold, can constantly balance, occasionally stoop, kneel, crouch and crawl. Manipulative capabilities, reaching, handling, fingering and feeling are all frequent as opposed to constant. No visual limits, no communications deficits. This person should avoid dangerous machinery and unprotected heights. That's it.

(Tr. 58).

The VE testified that such an individual could perform the claimant's past relevant work as

---

[2] As Plaintiff has not challenged the ALJ's credibility assessment, the court foregoes a summary of Plaintiff's hearing testimony.

7

it is normally performed and as defined in the DOT, but not as claimant performed it. (Tr. 58-59). The VE also identified the following jobs as examples of work that such an individual could perform: wire worker (light, unskilled) DOT 728.684-022 with 750 jobs locally and 105,000 jobs nationally; electronics worker (light, unskilled) DOT 726.687-010 with 450 jobs locally and 60,000 jobs nationally; and, assembly press operator (light, unskilled) DOT 690.685-014 with 660 jobs locally and 110,000 jobs nationally. (Tr. 59).

The ALJ posed a second hypothetical question:

> The second person would be able to lift, carry 20 pounds occasionally, 10 pounds frequently. Standing and walking is four out of eight. It could be done one hour at a time. Sitting is six out of eight, being seated for 45 minutes at a time, then a five-minute position change with no loss of productivity. Posturals are as follows, occasional ramps, stairs, never a ladder, rope or a scaffold, can frequently balance, occasionally stoop, never kneel, occasionally crouch, never crawl. All the rest of the hypothetical is the same as the first.

(Tr. 59-60).

The VE responded that "some of the jobs as past relevant work might remain, but I think many would be eliminated with the sitting and standing restrictions, possibly not." (Tr. 60). In addition, the VE testified that the aforementioned wire worker, electronics worker and assembly press operator jobs would remain, but in greatly reduced numbers with only 25 to 33 percent of those jobs remaining. *Id*. However, the VE identified the following sedentary jobs as examples of work that such an individual could perform: table worker, DOT 739.687-182 (400 jobs locally, 54,000 jobs nationally); final assembler, DOT 713.687-018 (600 jobs locally, 90,000 jobs nationally); and, bonder, DOT 726.685-066 (250 jobs locally, 40,000 jobs nationally). (Tr. 60-61).

In response to a question from Plaintiff's counsel, the VE testified that two absences per month would eliminate all jobs. (Tr. 61).

8

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since April 18, 2012, the alleged onset date (20 CPR 404.1571 et seq.).

3. The claimant has the following severe impairment: rheumatoid arthritis (20 CPR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can stand and walk for 1 hour at a time for a total of 4 hours in an 8-hour workday, and can sit for 45 minutes at a time for a total of 6 hours in an 8-hour workday; he must be permitted to change position every 5 minutes with no loss of productivity; he can frequently push, pull, and use foot pedals; he can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; he can frequently balance, occasionally stoop and crouch, but can never kneel or crawl; he can frequently reach, handle, finger, and feel bilaterally; he must avoid dangerous machinery and unprotected heights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on ***, 1976 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of

           disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 18, 2012, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 27-34).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignment of Error**

In a single assignment of error, Plaintiff asserts that substantial evidence does not support the ALJ's determination that Plaintiff was capable of frequently reaching, handling, fingering, and feeling. Plaintiff further argues that the ALJ failed to give good reasons for ostensibly rejecting the opinion of a treating source, Dr. Warren, on the same issue. (R. 12, PageID# 718-722). Although these arguments are related, they require separate analyses as addressed below.

**1. Treating Physician's Opinion**

Plaintiff asserts that the ALJ failed to give good reasons for ostensibly rejecting the upper extremity restrictions assessed by Dr. Warren in his November 2015 opinion. (R. 12, PageID# 721-722). The Commissioner disagrees, arguing the ALJ properly weighed Dr. Warren's opinion and did not reject Dr. Warren's manipulative restrictions. (R. 13, PageID# 742-746).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

12

source's medical opinion and the reasons for that weight."[3] *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at \*5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

---

[3] New regulations effective March 27, 2017, 20 C.F.R. §§ 404.1527 & 416.927, set forth the rules for evaluating opinion evidence, both medical and nonmedical, for claims filed *before* that date. Conversely, 20 C.F.R. §§ 404.1520c & 416.920c set forth the rules for evaluating such evidence for claims filed *on or after* March 27, 2017. The latter regulations, not applicable to the present case, eliminate the term "treating source," as well as what is customarily known as the "treating source rule." *See also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) ("we would no longer give a specific weight to medical opinions … this includes giving controlling weight to medical opinions from treating sources … [and] [w]e would not defer or give any specific evidentiary weight, including controlling weight, to any … medical opinion, including from an individual's own healthcare providers.") It bears noting that the current iterations of §§ 404.1527 & 416.927, while purporting to apply to claims filed *before* March 27, 2017, are not identical in language to the version in effect at the time of the ALJ's decision. For the sake of consistency, the court continues to cite the language from the former regulation sections that were in effect at the time of the ALJ's decision. Furthermore, while the current language of the regulations has been modified and renumbered, the changes, on their face, do not appear to be substantive and would not alter this court's recommendation. As noted by the Social Security Administration (SSA), for cases filed before March 27, 2017, it "will continue to apply [its] current rules for evaluating evidence from a treating source …." *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844 at 5861 (Jan. 18, 2017). Thus, the SSA also does not perceive its changes to be substantive.

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Warren's opinion as follows:

> As for the opinion evidence, on November 16, 2015, treating physician Van Warren, MD, completed a medical source statement indicating that the claimant can stand or walk for 5 hours during an 8-hour day, but he cannot sustain any work activity due to limited ability to perform repetitive tasks or lift heavy objects due to pain (13F:5). Great weight is given to this medical source statement because Dr. Warren has personally examined and treated the claimant, and his limitations are generally consistent with objective examinations (14F:2-3, 5-7, 9). However, limited weight is given to Dr. Warren's statement that the claimant cannot sustain any work activity because the determination of disability in accordance with the Social Security Administration is solely reserved to the Commissioner pursuant to SSR 96-5p. Furthermore, this statement is not supported by Dr. Warren's limitations from heavy lifting or repetitive activity, which are accommodated by the above residual functional capacity that limits the

>claimant to lifting only 20 pounds occasionally and 10 pounds frequently, and no more than frequent pushing, pulling, and manipulative activity.

(Tr. 31).

Plaintiff assumes, without any meaningful explanation, that the upper extremity limitations assessed by Dr. Warren are more restrictive than the ability to frequently reach, handle, finger, and feel bilaterally as found in the RFC. As recited above, Dr. Warren opined that Plaintiff's medical conditions interfere with his ability to "independently initiate, sustain, or complete activities involving the use of the upper extremities," as well as his ability "to sustain functions such as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." (Tr. 426). These statements alone, however, do not identify the extent of the interference caused by Plaintiffs medical conditions. Furthermore, Dr. Warren also opined that Plaintiff's impairments did *not* result in an inability to perform fine and gross movements effectively. *Id.* Therefore, Dr. Warren can fairly be characterized as expressing an opinion that Plaintiff's medical conditions do not preclude the ability to engage in fine and gross manipulation, but have reduced Plaintiff's abilities in these areas an unspecified amount.

Again, the ALJ found that Plaintiff could frequently reach, handle, finger, and feel bilaterally. (Tr. 29). "Frequently" is a term of art in the disability context. Pursuant to *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C*, an activity that is performed "frequently" exists from as little as 1/3 of the time up to (but not exceeding) 2/3 of the workday. By contrast, an activity performed "constantly" exists 2/3 of the workday or more. *Id.* (*see also* Social Security Ruling ("SSR") 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983) (defining "frequent" as "occurring from one-third to two-thirds of the time."))

15

Dr. Warren did expand somewhat on the above limitations, but the extent of the manipulative limitations he attributes to Plaintiff remains vague. He noted "limited repetitive movements of digits of both hands and both shoulders." (Tr. 426). He also indicated Plaintiff could not perform "prolonged forced movement like tight grasping and lifting heavy objects." *Id.* It is undisputed that Plaintiff was limited to light work that does not involve heavy lifting, and the ALJ expressly states that he is accommodating Dr. Warren's prohibition against heavy lifting by doing so. (Tr. 31). Dr. Warren does not explain what he means by the terms "repetitive" or "prolonged." (Tr. 424-428). Plaintiff cites no authority suggesting that these terms have any fixed meaning in the social security context. *See Lefevers v. Astrue*, No. 09-143, 2010 WL 11519608, at *7 (E.D. Ky. May 11, 2010) (observing that the medical source did not explain what he meant by "repetitive," which is not a term that is defined by social security regulations), *aff'd sub nom. LeFevers v. Comm'r of Soc. Sec.*, 476 Fed. App'x 608 (6th Cir. 2012). In *Lefevers*, despite the ALJ according great weight to a medical source's opinion that the claimant should avoid "repetitive lifting," the court found no inaccuracy in the ALJ's hypothetical where the claimant was limited to frequent lifting of 10 pounds. *Id.*

Because the court has no basis for concluding that Dr. Warren's opinion contained more restrictive manipulative limitation than the RFC, the court cannot find that the ALJ erred by failing to give good reasons for rejecting Dr. Warren's opinion. In other words, it not at all clear that the ALJ rejected rather than adopted the limitations contained in Dr. Warren's opinion.[4] It

---

[4] The court recognizes that the ALJ rejected Dr. Warren's opinion that Plaintiff was unable to work, but the court does not construe Plaintiff's brief as challenging this conclusion. It is well settled that opinions regarding whether a claimant is disabled, even those from acceptable medical sources, do not constitute "medical opinions." Further, the question of whether a claimant is disabled is an issue expressly reserved for the Commissioner and does not constitute a medical opinion. 20 C.F.R. § 404.1527(d)(1)-(3) (an ALJ need "not give any special

16

necessarily follows that the ALJ did not violate the treating physician rule where a clear inconsistency between the medical source's opinion and the RFC is not identified.

### 2. RFC Determination

Plaintiff further asserts that the ALJ's RFC finding, specifically the determination that Plaintiff can frequently reach, handle, finger and feel bilaterally, is unsupported by substantial evidence. (R. 12, PageID# 719).

The RFC is an indication of an individual's work related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).[5] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The concomitant hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In addition, testimony from a vocational expert—in response to a hypothetical question—

---

significance to the source of an opinion on issues reserved to the Commissioner…"); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986) (finding that the Commissioner is "not bound by a treating physician's conclusory statement). Therefore, while the ALJ expressly considered the statement, it was found to be unsupported by the assessed limitations." (Tr. 31).

[5] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

17

may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010) (same).

While Plaintiff points to evidence, including the above discussed opinion of Dr. Warren, that he believes could have justified greater manipulative restrictions, that alone does not establish a lack of substantial evidence. As noted above, a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512. Here, the ALJ's finding, with respect to Plaintiff's ability to perform gross and fine manipulation frequently, is supported by state agency physicians Dr. Hughes and Dr. Gorniak. Both opined that Plaintiff can perform "no more than frequent bilateral handling and fingering." (Tr. 72-73, 87-88). The ALJ explicitly ascribed great weight to these opinions. (Tr. 31). State agency consultative opinions may constitute substantial evidence

supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept.8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.")

Although Plaintiff clearly believes more restrictive limitations could have been assessed based on the medical record, that belief does not establish a violation of the substantial evidence standard. The court finds no merit to Plaintiff's assignment of error.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: June 11, 2018

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).